**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT LOWINGER, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>TALLGRASS ENERGY, LP, WILLIAM R. MOLER, MARCELINO OREJA ARBURUA, GUY G. BUCKLEY, ROY N. COOK, THOMAS A. GERKE, WALLACE C. HENDERSON, MATTHEW J.K. RUNKLE, and TERRANCE D. TOWNER,<br><br>              Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Robert Lowinger ("Plaintiff"), by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Tallgrass Energy, LP ("Tallgrass", "TGE" or the "Partnership") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications; (c) review of news articles, shareholder communications, and postings on TGE's website; and (d) review of other publicly available information.

<u>**NATURE OF THE ACTION**</u>

1.    This action is brought as by Plaintiff on behalf of himself and the other public holders of Class A shares representing a limited partner interest of TGE (collectively, the "Class A shares" or "Stock") against the Partnership and the members of the board of directors (the

"Board") of TGE's general partner ("TGE GP") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of TGE.

2.      On December 16, 2019, the Board caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with Prairie Private Acquiror LP and Prairie Merger Sub LLC ("Merger Sub" and, with Prairie Private Acquiror LP, "Buyer").   The transaction referred to in the Merger Agreement (*i.e.* the merger of Merger Sub with and into the Partnership, with the Partnership being the surviving corporation) is referred to herein as the "Proposed Transaction."

3.      Under the terms of the Merger Agreement, TGE stockholders will receive $22.45 in cash, without interest, for each share of TGE Stock they hold (the "Merger Consideration").

4.      The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Tallgrass.  Tallgrass expects the Proposed Transaction to close in the second quarter of 2020.

5.      On January 21, 2020, in order to convince TGE's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a preliminary proxy statement, which was filed with the SEC on Schedule 14A (the "Proxy Statement").  The Proxy Statement is materially incomplete and misleading, in violation of Exchange Act Sections 14(a) and 20(a).

6.      While Defendants, in the Proxy Statement, tout the fairness of the Merger Consideration to the Partnership's stockholders, they have failed to disclose material information necessary for TGE's stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy Statement incomplete and misleading.

7.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Partnership's stockholders prior to the forthcoming stockholder vote

so that they can properly exercise their corporate suffrage rights.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9.

8.      Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tallgrass's stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

10.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

11.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391, because Defendants are found or are inhabitants or transact business in this District and because TGE's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

12.      Plaintiff is, and at all relevant times has been, a TGE stockholder.

13.     Defendant Tallgrass Energy, LP is a Delaware limited partnership with its principal executive offices located at 4200 W. 115th Street, Suite 350, Leawood, Kansas 66211. TGE Stock is traded on the NYSE under the symbol "TGE." TGE is a publicly traded, growth-oriented limited partnership that owns, operates, acquires and develops midstream energy assets in North America.

14.     Defendant William R. Moler has served as the Chief Executive Officer of TGE GP since November 2019 and has been on the Board since February 2015.

15.     Defendant Marcelino Oreja Arburua has served on the Board since March 2019.

16.     Defendant Guy G. Buckley has served on the Board since March 2019.

17.     Defendant Roy N. Cook has served on the Board since September 2018.

18.     Defendant Thomas A. Gerke has served on the Board since August 2015.

19.     Defendant Wallace C. Henderson has served on the Board since March 2019.

20.     Defendant Matthew J.K. Runkle has served on the Board since March 2019.

21.     Defendant Terrance D. Towner has served on the Board since September 2018.

22.     The Defendants named in ¶¶14-21 are collectively referred to herein as the "Individual Defendants" and, with Tallgrass, as "Defendants."

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the other stockholders of Tallgrass (the "Class"). Excluded from the Class are Defendants herein and any person or other entity related to or affiliated with any Defendant.

24.     This action is properly maintainable as a class action because:

        a.     The Class is so numerous that joinder of all members is impracticable. As of October 30, 2019, TGE had 179,197,416 Class A shares outstanding. Those shares are beneficially held by hundreds to thousands of individuals and entities scattered around the world. The actual number of public stockholders of Tallgrass will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.    Whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

ii.    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.    Whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy Statement.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### The Partnership Announces the Proposed Transaction

25.    At 12:58 am on December 17, 2019, Tallgrass publicly announced the Proposed

Transaction via a press release that stated, in pertinent part:

**Tallgrass Energy Announces Agreement for the Purchase of its Publicly-Held Class A Shares by Blackstone Infrastructure Partners**

LEAWOOD, Kan.--(BUSINESS WIRE)--Tallgrass Energy, LP (NYSE: TGE) today announced that it has entered into a definitive merger agreement pursuant to which affiliates of Blackstone Infrastructure Partners together with affiliates of Enagas, GIC, NPS and USS (collectively with Blackstone Infrastructure Partners, the "Sponsors") will acquire all of the publicly-held outstanding Class A Shares of TGE for $22.45 in cash per Class A Share.

The transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary conditions, including approval of the merger by holders of a majority of the outstanding Class A and Class B Shares of TGE, voting together as a single class, inclusive of the approximately 44 percent of the total Class A and Class B Shares held by the Sponsors. Upon closing of the transaction, the Class A Shares will cease to be publicly traded. Pursuant to the merger agreement, TGE has agreed not to pay distributions during the pendency of the transactions contemplated by the merger agreement.

The Conflicts Committee of the Board of Directors of Tallgrass Energy GP, LLC, TGE's General Partner ("TGE GP"), after consultation with its independent legal and financial advisors, unanimously approved the transaction and determined it to be in the best interests of TGE and its public shareholders.

The Sponsors expect to fund the purchase of the Class A Shares with approximately $3 billion of equity, with the remainder of the funding necessary to consummate the transaction provided by debt.

Citigroup Global Markets Inc. and Credit Suisse Securities (USA) LLC served as financial advisors and Vinson & Elkins L.L.P. acted as legal advisor to Blackstone Infrastructure Partners. Latham & Watkins LLP acted as legal advisor to Enagas. Sidley Austin LLP acted as legal advisor to GIC.

Evercore Group LLC served as the financial advisor and Bracewell LLP acted as legal advisor to the Conflicts Committee of the Board of Directors of TGE's General Partner.

Baker Botts L.L.P. acted as legal advisor to TGE.

**About Tallgrass Energy**

Tallgrass Energy, LP (NYSE: TGE) is a growth-oriented midstream energy infrastructure company operating across 11 states with transportation, storage, terminal, water, gathering and processing assets that serve some of the nation's most prolific crude oil and natural gas basins.

To learn more, please visit our website at www.tallgrassenergy.com.

**About Blackstone**

Blackstone is one of the world's leading investment firms. We seek to create positive economic impact and long-term value for our investors, the companies we invest in, and the communities in which we work. We do this by using extraordinary people and flexible capital to help companies solve problems. Our asset management businesses, with $554 billion in assets under management, include investment vehicles focused on private equity, real estate, public debt and equity, growth equity, opportunistic, non-investment grade credit, real assets and secondary funds, all on a global basis. Further information is available at www.blackstone.com. Follow Blackstone on Twitter @Blackstone.

Infrastructure is one of Blackstone's most active investment areas. Over the last 15 years, we have invested in more than $45 billion of infrastructure-related projects globally. Blackstone's approach to infrastructure investing is one that puts a focus on responsible stewardship and community engagement. In areas such as clean power, energy transmission, communications technology, and many others, we have helped move forward sustainable projects that drive local economic growth and job creation, and enhance quality of life. In doing so, we work closely with civic stakeholders to help make sure that critical infrastructure is developed in a responsible manner that is responsive to community needs.

**About Enagas**

Enagás is a leading international energy company with 50 years' experience. It is one of the companies with the most LNG terminals in the world. It has a presence in Spain, the USA, Mexico, Chile, Peru and Greece. It is also one of the shareholders in the Trans Adriatic Pipeline (TAP), which will connect Greece, Albania and Italy to bring natural gas from the Caspian Sea to Europe. The company is certified as a Transmission System Operator (TSO) by the European Union and is an international benchmark in the development and operation of gas networks. It owns more than 12,000 km of gas pipelines, three strategic storages and nine regasification plants. In Spain, Enagás is the Technical Manager of the Gas System and has developed the country's key gas infrastructures, making it a model within Europe.

Listed on the IBEX 35 Spanish stock market, Enagás has also been present in the main sustainability indexes such as the Dow Jones Sustainability Index (DJSI), for eleven consecutive years. The company is the world leader of its sector, according to the latest DJSI revision.

Enagás is also committed to the fight against climate change through initiatives to promote the use of renewable gases, such as biomethane and hydrogen, and through the development of actions for energy efficiency and sustainable mobility. For more information about Enagás: www.enagas.es

Twitter: @enagas

**About GIC**

GIC is a leading global investment firm established in 1981 to manage Singapore's foreign reserves. As a disciplined long-term value investor, GIC is uniquely positioned for investments across a wide range of asset classes, including equities, fixed income, private equity, real estate and infrastructure. In infrastructure, GIC's primary strategy is to invest directly in operating assets with a high degree of cash flow visibility and which provide a hedge against inflation. GIC has investments in over 40 countries. Headquartered in Singapore, GIC employs over 1,500 people across 10 offices in key financial cities worldwide. For more information on GIC, please visit www.gic.com.sg or LinkedIn.

**About NPS**

NPS is a public pension fund in South Korea with assets under management of KRW 714.3 trillion ($620 billion) as at September 30, 2019. Established in 1988, the purpose of the fund is to maximize investment return while maintaining long-term fiscal stability to stabilize and promote public livelihood and welfare in the Korea. With a distinct risk-return profile from traditional asset classes, alternative investments portfolio of NPS has contributed to generating sustainable returns for the total portfolio. NPS is headquartered in Korea and has 3 overseas offices in New York, London, and Singapore. For more information about NPS, please visit fund.nps.or.kr.

**About USS**

USSL is the corporate trustee of one of the largest private sector pension funds in the UK with assets under management of £68 billion as at 31 March 2019 and over 400,000 members across more than 350 universities and other higher education and associated institutions in the UK.

USSL, through its investment manager, USSIM, is a long-term owner of assets with a track record of investing in infrastructure and infrastructure-like businesses.

Additional Information and Where to Find It

In connection with the transactions referred to in this press release, TGE expects to file with the Securities and Exchange Commission ("SEC") and mail to TGE's security holders a proxy statement and other relevant documents. This material is not a substitute for the proxy statement or for any other document that TGE may file with the SEC and send to TGE's security holders in connection with the

proposed transactions. INVESTORS AND SECURITY HOLDERS OF TGE ARE
URGED TO READ THE PROXY STATEMENT AND OTHER DOCUMENTS
FILED WITH THE SEC CAREFULLY AND IN THEIR ENTIRETY WHEN
THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN
IMPORTANT INFORMATION. Investors and security holders will be able to
obtain free copies of the proxy statement (when available) and other documents
filed with the SEC by TGE through the website maintained by the SEC at
http://www.sec.gov. Copies of the documents filed with the SEC by TGE will be
available free of charge through TGE's website at www.tallgrassenergy.com, in the
"Investor Relations" tab near the top of the page, or by contacting TGE's Investor
Relations Department at (913) 928-6012.

**Participants in Solicitation**

TGE GP's and its affiliates' directors, officers and employees may be considered
participants in the solicitation of proxies with respect to the proposed transactions
under the rules of the SEC. Information about the directors and executive officers
of TGE GP may be found in TGE's 2018 Form 10-K filed with the SEC on February
8, 2019 and any subsequent Current Reports on Form 8-K and statements of
changes in beneficial ownership filed with the SEC after the filing of TGE's 2018
Form 10-K. These documents can be obtained free of charge from the sources
indicated above. Additional information regarding the participants in the proxy
solicitations and a description of their direct and indirect interests, by security
holdings or otherwise, will also be included in any proxy statement and other
relevant materials to be filed with the SEC when they become available.

## The Preclusive Deal Provisions

26.     In addition to failing to conduct a fair and reasonable sales process, the Individual

Defendants agreed to certain deal protection provisions in the Merger Agreement that operate

conjunctively to deter other suitors from submitting a superior offer for Tallgrass.

27.     Specifically, pursuant to the Merger Agreement and a Support Agreement entered

into in connection therewith, Defendants agreed to: (i) a strict non-solicitation provision that

prevents the Partnership from soliciting other potential acquirers or even continuing discussions

and negotiations with potential acquirers; (ii) an information rights provision that requires the

Partnership to disclose the identity of any competing bidder and to furnish information within 48

hours about any competing bid; (iii) TGE's Sponsors agreed to vote approximately 44.1% of the

total voting power of TGE's outstanding voting securities as of December 31, 2019 that they

control in favor of the Proposed Transaction and against any alternative proposal, and; and (iv) a provision that requires the Partnership to pay Buyer a termination fee of $70 million if the Merger Agreement is terminated by Buyer in connection with a TGE Adverse Recommendation Change.

28.    These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Tallgrass.

29.    Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Tallgrass's stockholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

30.    Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to TGE's stockholders to ensure that it did not contain any materially false and misleading statements or material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Partnership's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material Omissions Relating to Financial and Business Projections**

31.    The Proxy Statement discloses the Partnership's projections of certain financial measures that are not defined by generally accepted accounting principles ("GAAP"), including Adjusted EBITDA and Cash Available for Dividends.  However, in the Proxy Statement, Defendants failed to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP metrics.

32.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has therefore heightened its scrutiny of the use of such projections.

**Material Omissions Relating to The Process Leading up to the Proposed Transaction**

33.     The Proxy Statement discloses that "Mr. Jones, Bracewell and Vinson & Elkins established a process by which Mr. Jones would share communications received by TGE from TGE Unaffiliated Shareholders regarding the Potential Transaction with Bracewell and Vinson & Elkins, for forwarding on to their respective clients. Mr. Jones periodically forwarded such shareholder communications from September through December 2019."

34.     The Proxy Statement, however, fails to disclose any information about communications received by TGE from TGE Unaffiliated Shareholders.

* * *

35.     The omission of the foregoing information render the "**Background of the Merger**"; "**Reasons for the Conflicts Committee's Recommendation**", and "**Certain Financial Projections**" sections of the Proxy Statement materially incomplete, in contravention of the Exchange Act.

**COUNT I**

**AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. §78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholders' support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the background of the transaction and financial projections for the Partnership.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42.     Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Partnership's directors.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

## AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Tallgrass within the meaning of Section 20(a) as alleged herein.  By virtue of their positions as officers and directors of Tallgrass, and participation in and/or awareness of the Partnership's operations and intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50.     In addition, as the Proxy Statement sets forth at length, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a).

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a).  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

53.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Partnership discloses the material information discussed above which has been omitted from the Proxy Statement;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

    Plaintiff demands a trial by jury on all issues so triable.

Dated: February 5, 2020             **ABRAHAM, FRUCHTER &**
                                              **TWERSKY, LLP**

                         By:   */s/*  Michael J. Klein
                                Michael J. Klein
                                One Penn Plaza, Suite 2805
                                New York, NY 10119
                                Telephone: (212) 279-5050
                                Facsimile: (212) 279-3655
                                Email: mklein@aflaw.com

                                *Attorneys for Plaintiff*